**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| Travionte Williams (M15178), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 24 C 50375 |
| v. | ) | |
| | ) | Hon. Iain D. Johnston |
| Officer Miller, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

State prisoner Travionte Williams brings this *pro se* civil rights action, 42 U.S.C. § 1983, alleging that Jacob Miller, an officer at Dixon Correctional Center, used OC spray on him at a time when Plaintiff was unresponsive in his cell. Now before the Court is Defendant's motion for summary judgment, to which Plaintiff has responded. Defendant Miller's actions are questionable, but the doctrine of qualified immunity requires that summary judgment be granted.

**BACKGROUND**

**A. Northern District of Illinois Local Rule 56.1**

Local Rule 56.1 governs the procedures for filing and responding to motions for summary judgment in this court. The rule is intended "to aid the district court, which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information, in determining whether a trial is necessary." *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) (cleaned up). Local Rule 56.1(a)(2) requires the moving party to provide a statement of material facts that complies with Local Rule 56.1(d). Local Rule 56.1(d)(2) requires that "[e]ach asserted fact must be supported by citation to the specific evidentiary material, including the specific page number, that supports it. The court may disregard any asserted fact that is not supported with such a citation."

The opposing party must then respond to the movant's proposed statements of fact. *Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005); LR 56.1(e). In the case of any disagreement, "a party must cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact. Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." LR 56.1(e)(3). A response may not set forth new facts or legal arguments. LR 56.1(e)(2). "[M]ere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material." *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003).

Per the Court's standing order and practice, it held a prefiling conference, during which the Court fully explained the summary judgment process. Dkt. 61. Because Plaintiff is proceeding *pro se*, Defendant served him with a Local Rule 56.2 Notice to Unrepresented Litigants Opposing Summary Judgment. (Dkt. No. 67.) Plaintiff responded by submitting a memorandum in opposition to the motion (Dkt. No. 73), a Declaration (Dkt. No. 74-2), a response to Defendants' factual statements (Dkt. No. 75), and a Statement of Additional Material Facts (Dkt. No. 76). Defendants then submitted a reply memorandum and a response to Plaintiff's Statement of Additional Facts. (Dkt. Nos. 83-84.)

Where Plaintiff has not properly disputed a fact, the Court will accept it as true. *Smith*, 321 F.3d at 683. Nonetheless, Plaintiff's failure to strictly comply with Local Rule 56.1 is not a basis for automatically granting Defendant's motion. *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021). Rather, the Court is mindful that the moving party has the "ultimate burden of persuasion" to show entitlement to judgment as a matter of law. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006).

### A. Relevant Facts[1]

At all times relevant, Plaintiff was in the custody of the Illinois Department of Corrections (IDOC) at Dixon Correctional Center. (Def.'s SOF, Dkt. No. 64, at ¶ 1.) Plaintiff was housed in Cell XC-28 in Dixon's Psychiatric Restrictive Housing Unit. (*Id.* at ¶ 2.) Defendant Miller was assigned as an officer in the Restrictive Housing Unit and worked the 7 a.m. to 3 p.m. shift. (*Id.* at ¶ 3.)

On Dec. 1, 2023, Plaintiff fell and hit his head in his cell. (*Id.* at ¶ 4.) He was face-down on the floor of the cell. (*Id.* at ¶ 5.) Plaintiff was laying on his stomach and his side. (*Id.* at ¶ 6; *see* Pl.'s Resp. to Def.'s SOF, Dkt. No. 75, at ¶ 6.) While on the floor, Plaintiff could not see or hear anything. (*Id.* at ¶ 7.)

At 1:50 p.m., Defendant Miller was informed by another inmate that Plaintiff had fallen and hit his head. (*Id.* at ¶ 8.) Defendant was not present when Plaintiff fell and did not see Plaintiff fall or hit his head. (*Id.* at ¶¶ 9, 10.) Defendant did not observe Plaintiff bleeding. (*Id.* at ¶ 11.) He did not know Plaintiff was experiencing a seizure. (*Id.* at ¶ 12.) Plaintiff testified that he was four days into a hunger strike and two days into a "water strike" at the time of the incident. (*See* Pl.'s Dep., Dkt. No. 64-4, at 22:13-23.) But he has not pointed to evidence indicating that Officer Miller was aware of this.[2]

Defendant Miller immediately went to Plaintiff's cell and observed Plaintiff on the floor with his head by the door. (Def.'s SOF, Dkt. No. 64, at ¶ 13.) Defendant Miller assessed the

---

[1] This Court has jurisdiction under 28 U.S.C. § 1331, and venue is appropriate under 28 U.S.C. § 1391 because a substantial part of the events giving rise to this claim occurred within the Northern District of Illinois while Plaintiff was incarcerated at Dixon Correctional Center.

[2] Plaintiff instead points to his own testimony that the officer who attempted to serve him lunch on the day in question would have been required to report his refusal to Officer Miller, who would have been required to record this in a log book. (*See* Pl.'s Decl., Dkt. No. 74-2, at ¶ 6; Pl.'s Dep., Dkt. No. 64-4, at 33:9-34:5.) Nothing in the record indicates this actually occurred, however.

situation and believed that Plaintiff could have been in need of medical attention, or he could have been "playing possum." (*Id.* at ¶ 14.) "Playing possum" occurs when an individual in custody acts unresponsive to ambush or attack officers. (*Id.* at ¶ 15.) Officer Miller averred that "playing possum" is something that occurs at Dixon Correctional Center and a topic about which he has been trained. (Miller Decl., Dkt. 64-3, at ¶ 22.) Plaintiff asserts that he had "never . . . played possum under no circumstance." (*See* Pl.'s Decl., Dkt. No. 74-2, at ¶ 19.)

Defendant Miller asked Plaintiff if he was okay. (Def.'s SOF, Dkt. No. 64, at ¶ 16.) Plaintiff did not respond. (*Id.*) Defendant called a "Code 3" over the prison radio. (*Id.* at ¶ 17.) A "Code 3" alerts medical providers and command staff that an individual in custody may need medical attention. (*Id.* at ¶ 18.)

An individual in restrictive custody must be restrained before the inmate is escorted for medical attention. (*Id.* at ¶ 19; *see* Pl.'s Resp. to Def.'s SOF, Dkt. No. 75, at ¶ 19.) This is intended to protect the inmate, health care providers, and officers. (*Id.*)

Defendant Miller directly ordered Plaintiff to get up and "cuff up" three times, so that he could be restrained to receive medical care. (*Id.* at ¶ 20.) Unsurprisingly, Plaintiff did not respond to those orders. (*Id.* at ¶ 21.) Plaintiff contends that he has no knowledge of what was said because he was unconscious.[3] (*See* Pl.'s Resp. to Def.'s SOF, Dkt. No. 75, at ¶¶ 20-21.)

When Plaintiff did not respond to Miller's orders, Miller administered one burst of Oleoresin Capsicum ("OC") spray[4] into Plaintiff's cell, toward Plaintiff's facial area. (*Id.* at ¶ 22.) Plaintiff contends that Miller administered more than one burst of OC spray, but

[3] Plaintiff testified that he believed he suffered a seizure because when he woke up, he couldn't move his limbs and he smelled smoke, which occurs when he has a seizure. (*See* Pl.'s Dep., Dkt. No. 64-4, at 37:25-39:1.)

[4] OC spray, commonly called pepper spray, is a substance containing the compound capsaicin as the active ingredient that irritates the eyes to cause burning and pain. *Harper v. Zawitowski*, No. 3:22-CV-409, 2023 WL 6976505, at *2 n. 2 (N.D. Ind. Oct. 23, 2023).

acknowledged during his deposition that he does not know how many times he was pepper-sprayed. (*See* Pl.'s Resp. to Def.'s SOF, Dkt. No. 75, at ¶ 22; Pl.'s Dep., Dkt. No. 64-4, at 43:13-20.) [5]

Plaintiff responded to the OC spray, but it took him a few minutes to get up, come to the cuff hatch, and cuff up. (Def.'s SOF, Dkt. No. 64, at ¶ 23; Pl.'s Resp. to Def.'s SOF, Dkt. No. 75, at ¶ 23; Pl.'s Decl., Dkt. No. 74-2, at ¶ 15.)

Defendant Miller did not administer OC spray after Plaintiff became responsive. (Def.'s SOF, Dkt. No. 64, at ¶ 24.) Plaintiff got up and was placed in restraints by a correctional sergeant. (*Id.* at ¶ 25.) Plaintiff was taken to an eyewash station. (*Id.* at ¶ 26.) Ten minutes after the incident began, at 2 p.m., Plaintiff was assessed by Nurse Snyder. (*Id.* at ¶ 27.) Nurse Snyder did not observe any injuries to Plaintiff. (*Id.* at ¶ 28.) Plaintiff asserts that he was injured by the OC spray insofar as he experienced a burning sensation on his skin for three days following this incident. (Pl.'s Dep., Dkt. No. 64-4, at 50:2-24.)

It is undisputed that Defendant Miller completed IDOC training, including training on how to respond to medical emergencies. (*See* Pl.'s SOAF, Dkt. No. 76, at ¶¶ 2-4.) Plaintiff further contends that Defendant received training on how to respond to seizures, but the cited evidence does not support this proposition. Moreover, Plaintiff has not pointed to evidence indicating that Defendant knew he was suffering a seizure at the relevant time. (*See* Pl.'s SOAF, Dkt. No. 76, at ¶ 5; Def.'s Resp. to Pl.'s SOAF, Dkt. No. 84, at ¶ 5.) But evidence shows that Miller was responding to Plaintiff's cell after being told that Plaintiff fell and hit his head. Defendant Miller was trained in the use of OC spray. (Pl.'s SOAF, Dkt. No. 76, at ¶ 6.) And

---

[5] The "sham-affidavit rule" prohibits a party from submitting an affidavit that contradicts his prior sworn testimony. *James v. Hale*, 959 F.3d 307, 316 (7th Cir. 2020). The rule reflects the principle that "a *genuine* issue of material fact cannot be conjured out of nothing." *Id.* (emphasis in original). Plaintiff does not explain this discrepancy. Therefore, his deposition testimony is controlling.

Miller received training on the use of force. (*Id.* at ¶¶ 8-9.) Miller was also trained to wait for additional staff to be called before opening a restricted housing door when an emergency has been called. (*Id.* at ¶¶ 10-11.)

Other officers were present on the scene with Miller and did not deploy their OC spray. (*Id.* at ¶¶ 16-20.) Defendant Miller wrote in his incident report that he deployed OC spray to gain compliance. (*Id.* at ¶ 21.) This is odd given that Plaintiff was unconscious, so his "noncompliance" was not intentional. In his Declaration submitted in support of his motion, Miller wrote that he "administered one burst of OC spray into Mr. Williams['s] cell to ensure he wasn't 'playing possum' and, if not, to get him medical attention as quickly as possible." (*Id.* at ¶ 22; *see* Def.'s Resp. to Pl.'s SOAF, Dkt. 84, at ¶ 22; Def.'s Decl., Dkt. No. 64-3, at ¶ 22.)

## <u>LEGAL STANDARD</u>

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To determine when a genuine dispute of material fact exists, the Court must assess the evidence in the record as presented in depositions, documents, affidavits or declarations, and other materials. Fed. R. Civ. P. 56(c)(1); *A.V. Consultants, Inc. v. Barnes*, 978 F.2d 996, 999 (7th Cir. 1992).

The party seeking summary judgment bears the initial burden of showing the grounds for his motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once he has done so, "the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). "A genuine issue of material fact exists only if 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Brown v. Osmundson*, 38 F.4th 545, 549 (7th Cir. 2022) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

The Court construes all facts in the light most favorable to the non-moving party and draws all legitimate inferences in favor of that party. *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). "A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact." *Id.* However, a bare contention by the non-moving party that an issue of fact exists does not create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), and the non-moving party is "only entitled to the benefit of inferences supported by admissible evidence, not those supported by only speculation or conjecture," *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (cleaned up).

## ANALYSIS

Defendant argues that (1) the burst of OC spray was justified by legitimate security concerns; and (2) he is entitled to qualified immunity. Mindful of the Supreme Court's admonition to "think hard, and then think hard again" before addressing both qualified immunity and the merits of an underlying constitutional claim, *see D.C. v. Wesby*, 583 U.S. 48, 62 n. 7 (2018) (citing *Camreta v. Greene*, 563 U.S. 692, 707 (2011)), and because the issue of whether the alleged unlawfulness of Miller's conduct was clearly established at the time of the incident is dispositive, the Court addresses only qualified immunity.

### A. Qualified Immunity Standard

Qualified immunity is an affirmative defense that shields officials from liability as long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Smith v. Kind*, 140 F.4th 359, 365 (7th Cir. 2025) (cleaned up). "Qualified immunity protects public officials 'from undue interference with their

duties and from potentially disabling threats of liability.'" *Manery v. Lee*, 124 F.4th 1073, 1079 (7th Cir. 2025) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982)). "[T]he doctrine gives officials 'breathing room to make reasonable but mistaken judgments about open legal questions.'" *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)). It protects "all but the plainly incompetent or those who knowingly violate the law." *Ashcroft*, 563 U.S. at 743 (cleaned up). The question is whether the officer had fair notice of the unlawfulness of his actions. *Taylor v. City of Milford*, 10 F.4th 800, 806 (7th Cir. 2021). Once a defendant raises this defense, the plaintiff has the burden of defeating it. *Smith,* 140 F.4th at 365.

To carry this burden, Plaintiff must show: (1) that defendant violated his constitutional rights and that (2) those rights were clearly established at the time of the violation. *Id.* The Court must determine the question of qualified immunity while reviewing the facts in the light most favorable to the non-moving party. *Estate of Williams by Rose v. Cline*, 902 F.3d 643, 648–49 (7th Cir. 2018). The Court will address only the second prong, as it is dispositive here.

As to whether the right was clearly established, the Court first looks to whether the Supreme Court or Seventh Circuit has previously held that conduct similar to the instant case violates the right at issue. *Smith v. Price*, --- F.4th ---, 2026 WL 2427614, at *7 (7th Cir. Aug. 19, 2026). If no controlling precedent exists, the court surveys all relevant caselaw to determine whether there was clear trend suggesting that recognition of the right was inevitable. *Id.* In rare cases, a right may be clearly established if the conduct is so egregious that no reasonable officer could have thought he was acting lawfully. *Johnson v. Edwards*, 164 F.4th 1074, 1079 (7th Cir. 2026).

"[R]ights defined only at 'a high level of generality' are not clearly established for the purposes of qualified immunity." *Id.; see Wesby,* 583 U.S. at 64 ( "A rule is too general if the

unlawfulness of the officer's conduct does not follow immediately from the conclusion that [the rule] was firmly established.") (cleaned up). In this regard, the Supreme Court and Seventh Circuit have cautioned against "reasoning from broad principles" when determining whether a right is clearly established. *Smith*, 140 F.4th at 370. Particularly in excessive force cases, "where it is sometimes difficult for an officer to determine how the relevant legal doctrine will apply to the factual situation the officer confronts, correctional officers are entitled to qualified immunity unless existing precedent squarely governs the *specific* facts at issue." *Id.* (cleaned up) (emphasis in original); *see also Est. of Thomson v. Behn*, 181 F.4th 724, 734 (7th Cir. 2026) (right at issue was not arrestee's general right to medical care, but his right to medical care in the specific context of that case). Qualified immunity depends on the circumstances as they reasonably appeared to the officer at the time the challenged conduct took place. *Gruenberg v. Gempeler*, 697 F.3d 573, 579–80 (7th Cir. 2012).

**B. Analysis**

A correctional officer's use of excessive force violates a prisoner's Eighth Amendment right against cruel and unusual punishment. *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992). Determining whether force was excessive depends on whether the force "was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* The "decisive factor" is the mindset of the officer in applying force. *Whitaker v. Dempsey*, 144 F.4th 908, 922 (7th Cir. 2025).

In regard to the use of OC or pepper spray, correctional officers' use of chemical agents is not a *per se* violation of the Eighth Amendment, even when an inmate is locked in his cell. *Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir. 1984). The appropriateness of the use must be determined by the facts and circumstances of each case. *Id.* It is a violation of the Eighth

Amendment for correctional officers "to use mace or other chemical agents in quantities greater than necessary or for the sole purpose of punishment or the infliction of pain." *Id.* Use of such agents should generally follow adequate warnings. *Lewis v. Downey*, 581 F.3d 467, 479 (7th Cir. 2009).

Defendant argues that he is entitled to qualified immunity because a reasonable officer in his position would not have known that administering one burst of OC spray to ensure that Plaintiff was not "playing possum," or faking a medical emergency in order to lure officers into a cell where a physical altercation could ensue.

Plaintiff cites *Soto*, 744 F.2d 1260, as the clearly established law prohibiting Miller's conduct in this case. (*See* Pl.'s Mem. in Resp. to Def.'s Mot. for Summ. J., Dkt. No. 73, at pg. 17.) In *Soto*, state prisoners in segregation at a maximum security facility sued over the use of tear gas and similar chemical agents. 744 F.2d at 1261–62. Several of the *Soto* plaintiff inmates posed "serious disciplinary problem[s]" and were maced after they refused orders to come to the front of the cell to be handcuffed. *Id.* at 1265–66. In every instance, after they were maced, they complied with orders to come to the front of the cell to be handcuffed. *Id.* at 1266. The Seventh Circuit held in *Soto* that the use of mace or other chemical agents "when reasonably necessary to prevent riots or escape or to subdue recalcitrant prisoners" does not violate the Eighth Amendment. *Id.* at 1270. By contrast, it is a violation of the Eighth Amendment for correctional officers "to use mace or other chemical agents in quantities greater than necessary or for the sole purpose of punishment or the infliction of pain." *Id.*

Plaintiff reasons from the broad principles outlined in *Soto* that the use of pepper spray was unconstitutional in his case because he was unconscious, presented no threat, and therefore no force was necessary. The relevant question, however, is whether a reasonable officer in

Defendant Miller's position would have known that using one burst of pepper spray to confirm that Plaintiff was not "playing possum" was unconstitutional in the specific circumstances he faced.

For example, the Seventh Circuit recently held in *Smith*, 140 F.4th at 370, that qualified immunity barred a claim by a prisoner on a prolonged hunger strike who officers pepper-sprayed despite a medical contraindication to pepper spray. In *Smith*, the prisoner refused to leave his cell for a required wellness check after 45 days on a hunger strike. *Id.* at 362–63. Because he refused orders to leave his cell, officers used an extraction team and a mobile restraint chair to remove the plaintiff from his cell and transport him to the healthcare unit. *Id.* at 363. After three days of using these procedures, however, the defendant prison captain obtained authorization to use pepper spray to extract the plaintiff even though the plaintiff had a "medical contraindication" to pepper spray. *Id.*

At the captain's orders, correctional officers arrived at the plaintiff's cell in tactical gear while the captain ordered the prisoner to come to the door of the cell. *Id.* The plaintiff refused, at which point the captain informed him of his intent to use pepper spray to gain compliance. *Id.* The plaintiff still refused. *Id.* The captain then deployed a burst of pepper spray through the cell window, causing the plaintiff to experience an asthma attack. *Id.* The plaintiff was strip-searched, extracted from his cell, and taken to the healthcare unit. *Id.*

Assessing the second prong of the qualified immunity analysis, the Seventh Circuit explained that *Soto* would not have put a reasonable officer on notice that using pepper spray to extract the plaintiff from his cell violated the Eighth Amendment under the circumstances confronted by the defendants. *Id.* at 370. The Seventh Circuit explained that *Soto* stands for the proposition that correctional officers are permitted to deploy pepper spray on non-compliant

inmates. *Id.* (citing 744 F.2d at 1270–71.)) No other precedent from the Seventh Circuit or Supreme Court addressed the circumstances at issue closely enough to defeat qualified immunity. *Id.* Nor did the case fall within the "narrow category of cases where the constitutional violation is so severe and blatant as to be obvious." *Id.*

The same is true in the instant case. In this regard, the circumstances as they reasonably appeared to Defendant Miller at the time of the incident were that another inmate had reported that Plaintiff had fallen and hit his head and Plaintiff was lying on the floor of his cell when Miller responded. But Miller did not witness the incident, did not see Plaintiff bleeding, and was not aware that Plaintiff had a seizure. A reasonable officer in Miller's shoes would not necessarily have concluded from the other inmate's report that Plaintiff was incapacitated. *See Olson v. Morgan*, 750 F.3d 708, 713 (7th Cir. 2014) ("[P]rison guards are neither required nor expected to believe everything inmates tell them.") (citing *Riccardo v. Rausch*, 375 F.3d 521, 527 (7th Cir. 2004)).

Miller was confronted with a situation in which prison regulations required Plaintiff, a prisoner in restrictive housing, to be restrained before transport for medical care, Plaintiff did not respond to multiple orders to cuff up, and Miller was aware that inmates sometimes "play possum" in order to lie in wait for officers who have to enter their cells to transport them. No Seventh Circuit or Supreme Court case law addresses the use of a single burst of chemical agent in circumstances in which a correctional officer is unsure whether an inmate has failed to respond to orders due to a medical emergency or because he intends to ambush officers.[6] Case

[6] The Court is mindful of case law holding that using even a single burst of pepper spray on a "docile and restrained" inmate can violate the Eighth Amendment. *Lee v. James*, 21-1114, 2021 WL 3197514, at *3 (7th Cir. July 29, 2021) (unreported) (citing *Lewis*, 581 F.3d at 479). But Plaintiff was not restrained at the time of the incident. And while Plaintiff states that he was not "playing possum" to ambush officers, he puts forth no evidence calling into question Defendant Miller's assertion that this was a security risk at Dixon Correctional Center. Plaintiff argues that Defendant Miller's explanations for the incident are inconsistent because Miller stated in the incident report that he used pepper spray to "gain compliance" after Plaintiff did not respond to three direct orders to

law also suggests that "[m]any inmates may experience pepper spray as a relatively minor use of force," *Smith*, 140 F.4th at 369, and that the use of pepper-spray may be preferable to a hands-on confrontation. *See Soto*, 744 F.2d at 1262 ("Without exception, the institutional officials and officers were of the opinion that the use of mace was much more humane and effective than a flesh to flesh confrontation with an inmate."); *see also Lewis*, 581 F.3d at 475–76 (recognizing the "important role" of "non-lethal, hands-off" means of force in "maintaining discipline and order within detention facilities").

Plaintiff argues that *Soto* controls because it stands for the proposition that it is unconstitutional to use chemical agents in quantities greater than necessary. But the Seventh Circuit also observed in *Soto* that correctional officers on the scene "are in a better position to determine when [the use of chemical agents] is necessary than the courts" and that their responsibility extends to the protection of guards as well as inmates. 744 F.2d at 1270. While explaining that the use of dangerous quantities of a chemical agent "is justified only in narrowly defined circumstances," the Seventh Circuit also observed that "the use of nondangerous quantities of the substance in order to prevent a perceived future danger does not violate 'evolving standards of decency' or constitute an 'unnecessary and wanton infliction of pain.'" *Id.* In other words, *Soto* does not, as Plaintiff suggests, establish an unyielding rule that correctional officers may not use chemical agents under the particular circumstances confronted by Officer Miller. Rather, *Soto* and a long line of cases establish that correctional officers are entitled to "special deference" in their approach to restoring or maintaining order in prison.

---

come to the door and cuff up, while he now states that he thought Plaintiff might be "playing possum." (*See* Pl.'s Mem. in Resp. to Def.'s Mot. for Summ. J., Dkt. No. 73, at pgs. 2-4.) Plaintiff makes a fair point. But the point is insufficient to overcome the qualified immunity defense, particularly when the case cited has no precedential value and involves very different facts. *Salazar v. Molina,* 37 F.4th 278, 286 (5th Cir. 2022); *Jackler v. Byrne*, 658 F.3d 225, 244 (2d Cir. 2011).

*Smith*, 140 F.4th at 368 (collecting cases). "That deference applies not only to materialized threats to prison order and inmate misconduct, like fighting or rioting, but also to preventative measures intended to avoid future disturbances." *Id.*

Plaintiff does not argue that a clear trend in the case law makes it clear that the force used in this case was unconstitutional. Nor is this a case in which the alleged constitutional violation is so blatant as to be obvious. *See, e.g., Hope v. Pelzer*, 536 U.S. 730, 738 (2002) (holding that correctional officers were not entitled to qualified immunity for handcuffing an inmate to a hitching post for seven hours in extreme heat because "the Eighth Amendment violation was obvious"); *Taylor v. Riojas*, 592 U.S. 7, 8–9 (2020) (per curiam) (correctional officers were not entitled to qualified immunity for housing an inmate in sewage-filled and/or frigidly cold cells for six days because any reasonable officer would know such conditions offend the Eighth Amendment).

Given that no other Seventh Circuit or Supreme Court case addresses a factual scenario close enough to the one at issue here to give Defendant notice that his conduct violated the Eighth Amendment, he is entitled to qualified immunity.

For all the foregoing reasons, Defendant's motion for summary judgment is granted. Final judgment will be entered. If Plaintiff wishes to appeal, he must file a notice of appeal with this Court within thirty days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). If Plaintiff appeals, he will be liable for the $605.00 appellate filing fee regardless of the appeal's outcome. *See Evans v. Ill. Dep't of Corr.*, 150 F.3d 810, 812 (7th Cir. 1998). If the appeal is found to be non-meritorious, Plaintiff could be assessed a "strike" under 28 U.S.C. § 1915(g). If a prisoner accumulates three "strikes" because three federal cases or appeals have been dismissed as frivolous or malicious, or for failure to state a claim, the prisoner may not file suit in federal

court without pre-paying the filing fee unless he is in imminent danger of serious physical injury. *Ibid.* If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* in this Court stating the issues he intends to present on appeal. *See* Fed. R. App. P. 24(a)(1).

## CONCLUSION

Defendant's motion for summary judgment [63] is granted. The Clerk is directed to enter final judgment and send a copy of this order to Plaintiff.

**DATE: September 8, 2026**

**Iain D. Johnston**
**United States District Judge**